**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| MICHELLE BAGLEY; SHARAN HARPER; GARY MILLINE; HAMILTON SMITH; MARCELLA URBAN and other similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>THE NEW YORK STATE DEPARTMENT OF HEALTH; HOWARD ZUCKER, COMMISSIONER OF THE NEW YORK STATE DEPARTMENT OF HEALTH, in his official capacity; and VISITING NURSE ASSOCIATION HEALTH CARE SERVICES, INC., d/b/a VNA of STATEN ISLAND,<br><br>Defendants. | 15 Civ. 4845 (FB) (CLP) |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO**
**VNA'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT .......................................................................................... 1

BACKGROUND ................................................................................................................. 3

    I.     THE NHTD WAIVER PROGRAM ...................................................................... 3

    II.    PROCEDURAL HISTORY ...................................................................................... 6

ARGUMENT ....................................................................................................................... 8

    I.     PLAINTIFFS HAVE A JUSTICIABLE REQUEST FOR INJUNCTIVE
           RELIEF ................................................................................................................ 9

    II.    PLAINTIFFS HAVE A JUSTICIABLE REQUEST FOR
           DECLARATORY RELIEF ................................................................................... 12

    III.   PLAINTIFFS HAVE A JUSTICIABLE REQUEST FOR DAMAGES ............... 14

CONCLUSION .................................................................................................................. 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amato v. City of Saratoga Springs, N.Y.*,
   170 F.3d 311 (2d Cir. 1999)......................................................................................15

*Begins v. Philbrook*,
   513 F.2d 19 (2d Cir. 1975)...................................................................................12, 13

*Beyah v. Coughlin*,
   789 F. 2d. 986 (2d Cir. 1986).....................................................................................15

*Bricklayers and Mason Local Union No 5 Ohio Pension Fund v. Transocean Ltd.*,
   2012 WL 4748151 (S.D.N.Y. Oct. 4, 2012) ...............................................................8

*Byrd v. Goord*,
   2007 U.S. Dist. LEXIS 71279 (S.D.N.Y. Sept. 26, 2007)...................................13, 14

*Chafin v. Chafin*,
   568 U.S. 165 (2013).............................................................................................8, 13

*City of Erie v. Pap's A.M.*,
   529 U.S. 277 (2000)..................................................................................................16

*City of Riverside v. Rivera*,
   477 U.S. 561 (1986)..................................................................................................15

*Fox v. Board of Trustees of State Univ. of New York*,
   42 F.3d 135 (2d Cir. 1994).......................................................................................15

*Golden v. Zwickler*,
   394 U.S. 103 (1969)..................................................................................................12

*Holt Civic Club v. City of Tuscaloosa*,
   439 U.S. 60 (1978)....................................................................................................17

*Jaghory v. New York State Dep't of Educ.*,
   1996 WL 712668 (E.D.N.Y. Dec. 5, 1996) ...............................................................11

*Japan Air Lines Co., Ltd. v. Int'l Ass'n of Machinists and Aerospace Workers*,
   538 F.2d 46 (2d Cir. 1976)........................................................................................13

*Knox v. Serv. Employees*,
   567 U.S. 298 (2012)....................................................................................................8

*Levin v. Harleston*,
   966 F.2d 85 (2d Cir. 1992)............................................................................................16

*Lloyd v. City of New York*,
   43 F. Supp. 3d 254 (S.D.N.Y. 2014)...............................................................................9

*Marino v. City Univ. of N.Y.*,
   18 F. Supp. 3d 320 (E.D.N.Y. 2014) .............................................................................14

*Mission Prod. Holdings, Inc. v. Tempnology, LLC*,
   139 S. Ct. 1652 (2019)..................................................................................................17

*Powell v. Nat'l Bd. of Med. Examiners*,
   364 F.3d 79 (2d Cir. 2004).............................................................................................16

*R.C. Bigelow, Inc. v. Unilever N.V.*,
   867 F.2d 102 (2d Cir. 1989)......................................................................................10, 11

*Toth v. City of New York Dep't of Educ.*,
   720 Fed. App'x 48 (2d Cir. 2018)...................................................................................16

*United States v. Georgia*,
   546 U.S. 151 (2006)........................................................................................................14

*United States v. W.T. Grant Co.*,
   345 U.S. 629 (1953)..........................................................................................................8

*Z Channel Ltd. P'ship v. HBO, Inc.*,
   931 F.2d 1338 (9th Cir. 1991) ........................................................................................15

**Statutes**

28 U.S.C. § 2201(a) ...............................................................................................................12

**Other Authorities**

Fed. R. Civ. P. 12(b) ...............................................................................................................8

Fed. R. Civ. P. 15(a) .............................................................................................................16

Fed. R. Civ. P. 54(c) .............................................................................................................16

## PRELIMINARY STATEMENT

This long-running putative class action concerns the delay and denial of the provision of benefits to some of the most vulnerable members of society: current and prospective nursing home residents.  For nearly a decade, Defendant Visiting Nurse Association Health Care Services, Inc. ("VNA") managed New York's Nursing Home Transition and Diversion ("NHTD") waiver program in New York City on behalf of Defendant New York State Department of Health ("DOH").  And for nearly a decade, VNA and DOH violated Plaintiffs' rights under federal law.  As a result, the program, which is intended to help eligible people transition out of nursing homes or avoid institutionalization in the first place, has suffered years of backlogs and chronic underutilization.  Indeed, the program has functioned so poorly that VNA was replaced in 2019.

Now, with fact discovery closed and trial scheduled for less than ten months away, VNA seeks to capitalize on its own failures in order to escape any determination of liability.  According to VNA, since it is no longer involved with the program, Plaintiffs can never obtain relief from VNA—and its conduct can never be adjudicated—because Plaintiffs' claims are moot.  Under this twisted logic, VNA (and defendants like it) can violate federal law with impunity, so long as those violations are flagrant enough for it to be removed from its position.

The Court should deny VNA's motion to dismiss and allow Plaintiffs' claims to go forward against it.  VNA has failed to satisfy its heavy burden of establishing that Plaintiffs' claims are moot for three reasons.

*First*, Plaintiffs have a justiciable demand for injunctive relief because there is a reasonable likelihood that they will be subject to the same misconduct again and, as this case shows, Plaintiffs may never be able to litigate that misconduct to judgment if they are denied the

1

ability to do so here.  Indeed, VNA cannot even show that *it* is not reasonably likely to engage in the same misconduct in the future: VNA was involved with the NHTD waiver program since its inception, for ten years; continues to administer similar programs for DOH; and expressed interest in continuing to administer the program.  While another organization, Westchester Independent Living Center, Inc. ("WILC"), currently administers the program (on a contract through 2024), it is reasonably likely that VNA will return to its longstanding role after that, or sooner if WILC's contract is cut short.

*Second*, Plaintiffs have a justiciable demand for a declaration that VNA's conduct violated federal law.  VNA administered the waiver program in New York City for the last ten years, and the parties have spent nearly half of that time litigating this case and developing a factual record as to VNA's unconstitutional policies and practices.  The parties now stand on the cusp of trial scheduled for early 2021.  That VNA is no longer involved with the program does not mean that Plaintiffs lack a concrete interest in the legality of VNA's conduct, or that a declaratory judgment no longer has any concrete value.  Plaintiffs' claims against DOH and VNA are distinct, based on Defendants' respective roles, and a declaration as to VNA's conduct in managing the waiver program will inform the administration of the program and ensure that the wrongful policies and procedures VNA implemented do not continue.

*Third*, Plaintiffs have a justiciable demand for monetary relief against VNA, both compensatory and nominal, based on VNA's years of misconduct.  It is well-settled that Plaintiffs may obtain such damages for the statutory and constitutional violations alleged, and the Amended Complaint expressly seeks any relief the Court deems just and proper.  Moreover, if necessary, Plaintiffs can seek leave to amend their complaint to include a specific request.

2

**BACKGROUND**

I.    **The NHTD Waiver Program**

New York State established the NHTD waiver program in 2008.  The program is a Medicaid Home and Community Based Services ("HCBS") waiver program administered by DOH throughout the State by contractual agreements with Regional Resource Development Centers ("RRDCs").  Dkt. No. 111, Am. Compl. ("AC") ¶¶ 40, 48-49.  From January 1, 2010 through October 31, 2019, VNA served as the RRDC for New York City.  *See id.* ¶ 75.

Since its inception, VNA and DOH failed to administer the program consistent with federal law, including the due process requirement to provide adequate notice with respect to access to benefits, and federal statutory requirements to furnish benefits to eligible individuals in a reasonably prompt, non-discriminatory manner.  To obtain benefits, an applicant must engage in a complicated, multi-step application process that starts with an intake interview to determine probable eligibility.  Yet VNA failed to provide adequate notice of its decisions to applicants regarding those eligibility determinations, in violation of their right to due process.  In some cases, VNA provided no notice of decision at all, leaving those applicants uncertain of the status of their applications for months at a time.  *See, e.g.*, *id.* ¶¶ 83, 163 (describing Ms. Harper's experience).  In others, VNA summarily denied applicants without an explanation or notice of their right to a fair hearing.  *See, e.g.*, *id.* ¶¶ 85, 87, 107, 120 (describing Ms. Bagley and Mr. Milline's experiences).  Still in others, VNA failed to notify applicants who had received a determination of eligibility that their application had been arbitrarily closed.  *See, e.g.*, *id.* ¶¶ 88, 139 (describing Mr. Smith's experience).

Even when an applicant is deemed eligible, he faces significant hurdles to accessing benefits because of the program's structural and administrative failures and lack of resources.  To complete an application packet and Initial Service Plan ("ISP"), an applicant must,

3

on his own and while confined to a nursing home, locate a "Service Coordinator" to take on his case and assist in the application process. *Id.* ¶¶ 65-66. Yet VNA failed even to keep its list of service coordinators up-to-date, *id.* ¶¶ 93-95, making it difficult for applicants to locate a service coordinator who was still active and taking on new cases, *see, e.g.*, *id.* ¶¶ 163-74 (describing Ms. Harper's experience with multiple proposed service coordinators over the course of nearly a year). At the same time, VNA refused to act as an intermediary between applicants and service coordinators, taking the position that applicants' "freedom of choice" in selecting a service coordinator meant they effectively had to fend for themselves, despite limited resources and often physical limitations. *See* Ex. A, VNA Dep. Tr., July 1, 2019, at 96-98. To add insult to injury, if an applicant could not locate a service coordinator on their own from VNA's unreliable list, VNA sometimes *closed* the applicant's case after an arbitrary period of time and without any notice, requiring the applicant to start back at square one. AC ¶ 139 (describing Mr. Smith's experience of learning his case had been closed after he had been searching unsuccessfully for a service coordinator for more than a year).

VNA's failure to maintain an accurate service coordinator list was exacerbated by the pay structure of the program, pursuant to which service coordinators are paid for their work only after an applicant successfully transitions into the community. *See* Ex. B, Gallego Dep. Tr., May 9, 2019, at 36-37. Because that process can take many months (or even years), service coordinators must essentially work for free and with no guarantee of payment when assisting applicants whose cases they take on. The system is thus designed to constrain service coordinator availability by placing the financial risk on the service coordinator. As a result of these (and other) issues, many applicants are left in a state of limbo, incapable of moving forward in the process through no fault of their own and often rejected from the program as a

result.  AC ¶ 96.  And even if an applicant can locate a service coordinator, it can take years to complete the ISP and obtain approval from VNA.  *Id.* ¶¶ 97-98.

While VNA has managed the day-to-day operations of the waiver program for the last decade, DOH has maintained "ultimate responsibility" for overseeing its operation.  *Id.* ¶ 53. DOH's failure to exercise proper oversight has exacerbated the problems wrought by the program's convoluted structure, administrative failures, and lack of resources, and by VNA's incompetence.  *See, e.g., id.* ¶ 54.  Because of Defendants' failures, the program has suffered from backlogs of more than one thousand individuals who were "referred" to the program (*i.e.*, individuals who are at the first step of the application process) but whose applications were not processed—a figure DOH has acknowledged is "significant."  *Id.* ¶ 15; *see also id.* ¶ 81 (citing backlogs in 2012 and 2015 that DOH allowed to persist even after directing VNA to devote its resources to clearing them).

The structural and operational failures have resulted in the program being consistently underutilized, leading to a reduction in its cap over the years, *id.* ¶ 43 (noting that New York has "reduced enrollment capacity by hundreds because enrollment in the program never reached the caps articulated in the earlier renewal application").  Instead of serving its laudatory purpose of assisting those in need, the NHTD waiver program has left Plaintiffs languishing in nursing homes, unable to access benefits that have been set aside by the State for their use.  *See, e.g., id.* ¶ 5 (observing that Mr. Smith has been waiting *eight years* to access the NHTD waiver program's benefits).

On September 4, 2018, DOH issued a statewide Request for Applications ("RFA") "to procure contractors to serve as RRDCs for a five-year term."[1]  Neither VNA nor

---

[1] *See* New York State Department of Health, *Single Source Procurement: Regional Resource Development Centers/Traumatic Brain Injury Medicaid Waiver/Nursing Home Transition and Diversion*

any other organization bid to be the RRDC for the New York City region in response to that RFA. *See id*. DOH subsequently "canvassed the solicitation list" and re-opened the bidding process but again received no response. *See id.* Finally, during a "no-bid recanvassing," WILC agreed to serve as the RRDC. *See id*. During this third stage of bidding, VNA indicated that it would have applied to continue serving as the RRDC, and believed that it was "uniquely qualified" to continue in that role given its experience, but claimed there had been "inadequate notice for the reissue" for it to bid on the project. *See id*; Ex. C, Email from VNA to DOH, Feb. 20, 2019.

## II.      Procedural History

Plaintiffs Michelle Bagley, Gary Milline, Hamilton Smith, and Marcella Urban filed this action in August 2015 on behalf of a putative class of current and prospective nursing home residents in New York City who have been denied access to, or denied the timely provision of, benefits under the NHTD waiver program. The Complaint asserts that VNA, DOH, and Howard Zucker, as Commissioner of DOH, have violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution, the Medicaid Act, Title II of the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act. The Complaint seeks declaratory and injunctive relief, as well as any other and further relief the Court deems proper.

Immediately after the Complaint was filed, the parties engaged in extended settlement negotiations overseen by Magistrate Judge Pollak. Those negotiations continued for over a year but proved unsuccessful. The parties commenced discovery in early 2017. Fact

---

*Medicaid Waiver Program*, https://www.health.ny.gov/funding/single_source/c34865gg_pgm.htm (last accessed Mar. 21, 2020).

discovery closed in November 2019.  Expert discovery is currently scheduled to close in the fall of this year and trial is scheduled for January 2021.[2]

While Plaintiffs have endeavored to promptly litigate their claims, the process has often been drawn out.  A recent example involved the deposition of VNA's corporate representative.  After waiting months to respond to Plaintiffs' 30(b)(6) notice of deposition, VNA sought an emergency continuance *24 hours* before the deposition because it had only then informed its counsel that the deponent, VNA's former Chief Executive Officer, had been terminated from his position at VNA, and thus VNA refused to designate him as its representative.  *See* Dkt. No. 133.

Similarly, Plaintiffs timely filed an amended complaint to add Sharan Harper as a named Plaintiff in February 2019.  Plaintiffs' claims otherwise remained the same, and the factual allegations were only slightly modified based on additional information learned during the case's pendency.  Nonetheless, Defendants refused to stipulate to the amendment and even opposed the motion to amend on the ground that the claims of two of the existing Plaintiffs, who were not the subject of the amendments, were moot because they now lived in the community. Dkt. No. 106 at 2.  In granting Plaintiffs' motion to amend, Judge Pollak observed that Defendants' objections had "nothing to do with Ms. Harper's claims or the additional factual changes made to the Complaint."  Dkt. No. 110 at 2.  Judge Pollak also highlighted Defendants' delay, stating that "although defendants claim that they are prepared to file a pre-motion conference request with the district judge, *they have not done so in the more than three months* since the last conference with this Court on January 24, 2019, when [P]laintiffs indicated their intention to add a new plaintiff." *Id*. at 10 (emphasis added).

---

[2] Given the current COVID-19 situation, Plaintiffs recognize the schedule may be modified.

Defendants subsequently filed pre-motion letters seeking to dismiss Ms. Bagley and Mr. Milline as Plaintiffs. Dkt. Nos. 112-13. On September 13, 2019, the parties had their first appearance before the Court, during which the Court noted the delayed nature of this case, set a trial date, and indicated that Defendants could file their motions but they most likely would not be considered prior to trial. Dkt. No. 198. Presumably based on that advice, DOH filed its Answer on February 20. VNA, by contrast, has forged ahead with its motion to dismiss. However, rather than seek to dismiss two of the five named Plaintiffs as before, VNA now requests to be dismissed from the case entirely because Plaintiffs' claims against it are purportedly moot. VNA's sole basis for its motion is that, effective October 31, 2019, DOH terminated VNA's contract as RRDC for the NHTD waiver program. Op. Br. at 3.

## ARGUMENT

"[A] case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (internal quotation marks omitted) (quoting *Knox v. Serv. Employees*, 567 U.S. 298, 307 (2012)). "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Id.* (quoting *Knox*, 567 U.S. at 307-08). As the party asserting mootness, VNA bears a "heavy" burden. *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953). In deciding VNA's Rule 12(b)(1) motion, "the court may consider materials beyond the pleadings." *Bricklayers and Mason Local Union No 5 Ohio Pension Fund v. Transocean Ltd.*, 2012 WL 4748151, at *1 (S.D.N.Y. Oct. 4, 2012).

VNA fails to meet its heavy burden here. VNA's observation that it does not currently serve as the RRDC of the NHTD waiver program falls far short of showing that the

Court cannot award any relief to Plaintiffs. The Amended Complaint asserts justiciable claims for injunctive, monetary, and declaratory relief. [3]

## I.    Plaintiffs Have a Justiciable Request for Injunctive Relief

VNA argues that Plaintiffs' request for injunctive relief is moot because it is no longer the RRDC, and as a result "relief cannot be granted against VNASI, nor could VNASI effectuate any of these injunctive remedies in the absence of the RRDC contract." Op. Br. at 7. But it is well-settled that claims that are "capable of repetition, yet evading review" present justiciable controversies that the Court should address. *See, e.g., Lloyd v. City of New York*, 43 F. Supp. 3d 254, 269-70 (S.D.N.Y. 2014). Under that doctrine, a request for injunctive relief is not moot if (1) "the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration," and (2) "there is a reasonable expectation that the same complaining party would be subjected to the same action again." *Id.* at 270. Both factors are met here.

First, this litigation has already gone on nearly five years—more than twice the length of the two-year contracts issued by DOH for VNA to administer the NHTD waiver program in New York City. *See, e.g.*, Ex. D, Renewal contract between DOH and VNA. Moreover, even without considering any possible appeal, it will be nearly six years from the date of the initial complaint to trial in 2021—a period longer than the current five-year contract between DOH and WILC. There is consequently a significant risk, borne out in this case to date, that the policies and practices of the RRDC for the NHTD waiver program will be too short in duration to be fully litigated prior to the RRDC role shifting hands.

---

[3] While VNA separates the issues of "standing" and "mootness," *see* Op. Br. Arg. Points I, II, mootness simply refers to the requirement that a plaintiff possess standing throughout the case, *see, e.g., Comer v. Cisneros*, 37 F.3d 775, 797-98 (2d Cir. 1994) ("While the standing doctrine evaluated a litigant's personal stake at the *onset* of a case, the mootness doctrine ensures that the litigant's interest in the outcome continues *throughout the life* of the lawsuit.") (emphases added). As VNA recognizes, the sole question for the Court is whether Plaintiffs' claims against VNA, which were indisputably justiciable prior to VNA's loss of the RRDC position, have been rendered moot.

Second, there is a reasonable expectation that Plaintiffs will be subjected to the same policies and procedures of the RRDC in the future. Plaintiffs continue to be subjected to delay and improper denial of the provision of program benefits, and VNA has not offered a shred of evidence to suggest that its policies and practices, which defined the RRDC role since 2010, will not continue. In fact, multiple employees from VNA are now employed by WILC for the NHTD waiver program. *See* Ex. E, DOH Dep. Tr., Oct. 25, 2019, at 630. Nor is it reasonable to simply assume, without any evidentiary basis, that WILC will change course, given that many of VNA's policies and procedures are the result of structural deficiencies in the program.[4]

Indeed, there is a reasonable expectation that Plaintiffs will be subjected to these same policies and procedures *by VNA*. That VNA is not *currently* the RRDC does not make it "absolutely clear" that it could not become the RRDC again, such that injunctive relief against VNA would serve no useful purpose. *R.C. Bigelow, Inc. v. Unilever N.V.*, 867 F.2d 102, 106 (2d Cir. 1989). While VNA baldly argues there is "no reasonable expectation that VNASI will apply for, and be approved by DOH to be the RRDC for the NHTD Medicaid Waiver Program," Op. Br. at 9, it does not "disavow[] any future intention" to apply for that role again, *R.C. Bigelow*, 867 F.2d at 106. Nor does VNA seriously claim that it could not serve as the RRDC for the New York City region again—it served in that role for nearly a decade. Indeed, just last year, VNA expressed interest in continuing to serve as the RRDC, touting itself as "uniquely qualified" to do so. *See* Ex. C. VNA also remains a Certified Home Health Agency under New York law, and it continues to administer other programs for the State.[5]

---

[4] Continued violations of federal law are unavoidable given the structural deficiencies in the NHTD waiver program DOH has overseen to date. *See*, *e.g.*, *supra* Background Section I. But it is not a practicable solution to require Plaintiffs to amend their pleadings and restart discovery from the outset each time an RRDC is replaced.

[5] Visiting Nurse Association of Staten Island, *Programs & Services*, http://vnasi.org/programs-and-services/ (last accessed Mar. 19, 2020).

Moreover, although WILC is the current RRDC through 2024, it is entirely possible that WILC may cease serving as the RRDC at the end of its contract term (or earlier). VNA would be a prime candidate for the RRDC role simply by virtue of (i) its certification, (ii) its experience running the program for 10 years, and (iii) the fact that, historically, there has been essentially little or no competition for the role. DOH's experience in replacing VNA proves the point. When DOH conducted a Request for Applications in 2018 for a new RRDC, *nobody* bid for the New York City region.[6] As a result, DOH "canvassed the solicitation list" and re-opened the bidding. *See id.* Again, nobody completed a bid to serve as the RRDC for the New York City region, and VNA was thus required to continue to stay on. *See id.* It was only during the no-bid canvass that WILC finally agreed to serve as the RRDC, and in announcing the decision DOH acknowledged the "lack of interest from other organizations." *Id.* Given the difficulty DOH had securing bids for the RRDC of the New York City region, and VNA's longstanding role, it is reasonably likely that VNA could return to serve as the RRDC.

The sole case that VNA cites to support its argument is inapposite. *See* Op. Br. at 6-7. There, plaintiff filed a lawsuit that included a request for injunctive relief after the state denied his request for a license to practice medicine in New York. *Jaghory v. New York State Dep't of Educ.*, 1996 WL 712668, at *1 (E.D.N.Y. Dec. 5, 1996). However, prior to the completion of the lawsuit, the state granted Plaintiff a medical license. *Id.* at *3. The court found that "[n]either injunctive nor declaratory relief will forward Jaghory's personal interests because he now has his license." *Id.* By contrast, Plaintiffs continue to be denied benefits under the NHTD waiver program as a result of VNA's (and DOH's) failures and actions.

---

[6] New York State Department of Health, *Single Source Procurement: Regional Resource Development Centers/Traumatic Brain injury Medicaid Waiver/Nursing Home Transition and Diversion Medicaid Waiver Program*, https://www.health.ny.gov/funding/single_source/c34865gg_pgm.htm (last accessed Mar. 19, 2020).

Injunctive relief is particularly appropriate here given the "significant public interest involved in having the legality of practices challenges in this case finally settled." *R.C. Bigelow*, 867 F.2d at 107. Plaintiffs are some of the most vulnerable members of society. They are seniors and other individuals with serious physical disabilities. There is a significant public interest in ensuring now, after five years of litigation, that a program designed to assist these vulnerable individuals operates effectively at the RRDC level.

## II.    Plaintiffs Have a Justiciable Request for Declaratory Relief

VNA's mootness argument separately fails in light of Plaintiffs' request for declaratory relief. Plaintiffs specifically sought a declaration that Defendants' "policies and practices violate" due process, the Medicaid Act, the ADA, and Section 504 of the Rehabilitation Act. AC Prayer for Relief ¶ 1. The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction," the court may "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). In the context of mootness, the question is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant issuance of a declaratory judgment." *Begins v. Philbrook*, 513 F.2d 19, 23 (2d Cir. 1975) (citing *Golden v. Zwickler*, 394 U.S. 103, 108 (1969)).

Here, Plaintiffs' claims retain sufficient immediacy and reality to warrant declaratory judgment as to VNA's policies and practices, notwithstanding the fact that VNA is no longer the RRDC. VNA served as the RRDC for the NHTD waiver program in New York City since its inception, and it had been in that role for the last ten years. Despite VNA's recent transition out of the RRDC role, its policies and practices as the RRDC are by definition *the* policies and practices of the RRDC to date. Every individual who applied to the NHTD waiver

12

program before November 1, 2019 first interacted with VNA as the RRDC of the NHTD waiver program. And it was VNA's (and DOH's) policies and practices that caused the injuries set forth in Plaintiffs' First Amended Complaint. A judgment as to the legality of the RRDC's policies and practices will thus affect the proper design and administration of the program going forward.

Moreover, many of VNA's policies and practices are a result of the structural deficiencies with the State's implementation of the NHTD waiver program itself. There is a significant likelihood, if not an inevitability, that the new RRDC will simply continue VNA's policies and procedures absent a declaration that they are unlawful, and VNA has offered no evidence to suggest otherwise. For instance, VNA has not identified any basis to conclude that the RRDC policy of leaving applicants to locate service coordinators on their own, without assistance, has changed. *See, e.g.*, *Japan Air Lines Co., Ltd. v. Int'l Ass'n of Machinists and Aerospace Workers*, 538 F.2d 46, 51 (2d Cir. 1976) (where "neither the challenged policy nor the [plaintiff's] objection to it ha[d] disappeared," policy retained impact warranting declaratory judgment).

Nor is this a case where a decision "would address a hypothetical state of facts," or one where the parties lack "concrete adverseness which sharpens the presentation of issues." *Chafin*, 568 U.S. at 173 (citations and quotation marks omitted). Plaintiffs have litigated their claims against VNA for five years, fact discovery is complete, and trial is less than ten months away. An adjudication of the lawfulness of VNA's policies and practices will rest on a fully developed factual record that is the result of hard-fought litigation. While "[t]he difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree," the controversy between Plaintiffs and VNA as to the legality of VNA's conduct is "much closer to the latter." *Begins*, 513 F.2d 19, 23-24 (2d Cir. 1975).

13

VNA relies on *Byrd v. Goord* to argue that Plaintiffs no longer have any concrete interest in the legality of its conduct as RRDC since it has been removed from that role.  Op. Br. at 8 (citing 2007 U.S. Dist. LEXIS 71279 (S.D.N.Y. Sept. 26, 2007)).  But *Byrd* demonstrates the opposite.  There, the plaintiffs sought a declaration that the Department of Correctional Services' ("DOCS") practice of collecting a sixty percent commission on revenue from inmates' telephone calls was unlawful.  *Id.* at *3.  The court held that DOCS had satisfied its heavy burden of demonstrating the practice had ceased because the governor had issued a directive barring the commission practice, and "[t]he possibility that DOCS would be free to reinstate its commission practice, . . . after a new governor assumes office, was intentionally foreclosed by the New York State legislature's enactment" of a law barring the same.  *Id.* at *11-12.  VNA points to nothing of the sort here.  Indeed, although VNA claims that declaratory relief "will serve no useful purpose in affecting the rights or legal interests of the parties," Op. Br. at 9, it does not even claim that the policies and practices it engaged in as the RRDC for the program *have ceased to continue*, much less that those policies and practices are foreclosed by operation of law— precisely the declaration Plaintiffs seek.  A determination that such conduct is unlawful, no matter who serves in the role of RRDC, would clearly serve a useful purpose to the many current and potential nursing home residents who are trying to access benefits under the NHTD waiver program and remain unable to do so.

**III.    Plaintiffs Have a Justiciable Request for Damages**

Finally, Plaintiffs' claims against VNA remain justiciable because Plaintiffs can still obtain damages.  Plaintiffs assert a host of constitutional and statutory claims against VNA for which damages, either compensatory or nominal, remain readily available.  In *Carey v. Piphus*, the Supreme Court held that courts are authorized to award "damages . . . to compensate persons for injuries that are caused by deprivation of [their] constitutional rights." 435 U.S. 247,

14

253-54 (1978). Indeed, damages remain a powerful and important remedy for plaintiffs seeking vindication of their constitutional rights. Plaintiffs could also obtain damages from VNA for its statutory violations. *See, e.g., United States v. Georgia*, 546 U.S. 151, 157-59 (2006) (holding that an individual can bring a suit for monetary damages under Title II of the ADA if the alleged conduct also violates the Fourteenth Amendment); *Marino v. City Univ. of N.Y.*, 18 F. Supp. 3d 320, 334 (E.D.N.Y. 2014) (holding that monetary damages are available for a Section 504 violation). That includes nominal damages. Courts have repeatedly underscored the symbolic and substantive importance—not to mention broad availability—of nominal damages for civil rights violations. *E.g.*, *Amato v. City of Saratoga Springs, N.Y.*, 170 F.3d 311, 317 (2d Cir. 1999) ("[A] litigant is entitled to an award of nominal damages upon proof of a violation of a substantive constitutional right even in the absence of actual compensable injury."). In fact, "it is now well established that if [a plaintiff] can prove that he was deprived of a constitutionally protected right . . . [plaintiff] will be entitled to recover *at least* nominal damages." *Beyah v. Coughlin*, 789 F. 2d. 986, 989 (2d Cir. 1986) (emphasis added).

Moreover, there is no bar to Plaintiffs recovering damages against VNA because Plaintiffs' claims against VNA are not made against state officials in their individual capacity or the state itself. Accordingly, Plaintiffs do not face the obstacles of qualified immunity or sovereign immunity that might otherwise defeat damages claims. *Compare Fox v. Board of Trustees of State Univ. of New York*, 42 F.3d 135 (2d Cir. 1994) (finding mootness where damages claim was unavailable due to defendant state officials' qualified immunity) *with Z Channel Ltd. P'ship v. HBO, Inc.*, 931 F.2d 1338 (9th Cir. 1991) (rejecting mootness argument where plaintiff could still seek damages from defendants).

15

That Plaintiffs did not specifically include a claim for damages in their complaint is of no moment. Plaintiffs have never foresworn damages, and they expressly sought "such other and further relief as the Court deems equitable and just." AC Prayer for Relief ¶ 8. Plaintiffs' prayer plainly encompasses damages given the context of the case, in which Plaintiffs assert constitutional and statutory civil rights violations, and there is no question that the Court has the authority under Rule 54(c) to award damages notwithstanding the lack of a specific claim in the complaint. *See* Fed. R. Civ. P. 54(c) ("[E]very final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, *even if that party has not demanded such relief in the party's pleadings*") (emphasis added). Put another way, "[u]nder Rule 54(c) . . . a court can grant any relief to which a prevailing party is entitled, whether or not that relief was expressly sought in the complaint." *Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 86 (2d Cir. 2004); *see also Levin v. Harleston*, 966 F.2d 85, 90 (2d Cir. 1992) (in response to mootness challenge as to injunctive relief, finding that "since Levin requested 'such other and further relief as the Court may deem just,'" "an award of declaratory relief is appropriate" and action was not moot). There is no bar to the Court ultimately awarding damages on Plaintiffs' claims against VNA.

Even if an express request for damages were necessary, Plaintiffs' claims would not be moot because Plaintiffs can seek leave to amend their complaint. Leave to amend should be "freely" granted where "justice so requires." *See* Fed. R. Civ. P. 15(a). To that end, courts routinely recognize that a plaintiff should receive an opportunity to amend the complaint where necessary to ward off a mootness challenge. *See, e.g., Toth v. City of New York Dep't of Educ.*, 720 Fed. App'x 48, 51-52 (2d Cir. 2018) (recognizing that complaint could be amended to address mootness argument). That is particularly appropriate under the circumstances.

16

Throughout this case's five-year history, VNA served as the RRDC and, in that role and as a result of its policies and procedures, unlawfully denied Plaintiffs of benefits. Now, after losing the contract to provide services under the NHTD waiver program, VNA seeks to extricate itself from this case with impunity, depriving Plaintiffs of *any* redress for VNA's conduct. The Court should not allow VNA to benefit from its own misconduct. *Cf. City of Erie v. Pap's A.M.*, 529 U.S. 277, 288 (2000) ("Our interest in preventing litigants from attempting to manipulate the Court's jurisdiction . . . further counsels against a finding of mootness here."). *See generally Holt Civic Club v. City of Tuscaloosa*, 439 U.S. 60, 66 (1978) ("a meritorious claim will not be rejected for want of a prayer for appropriate relief"). Whether or not the Court would grant Plaintiffs' motion to amend is irrelevant to the jurisdictional question raised by VNA's mootness argument. Under Article III, the relevant inquiry remains whether the Court *may* still grant "effectual relief," and not whether "[u]ltimate recovery" is guaranteed. *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1660 (2019). "If there is *any chance* of money changing hands, [the] suit remains live." *Id.* (emphasis added). Because there is, Plaintiffs' claims against VNA are not moot.

## CONCLUSION

After a decade of serving as the RRDC and half a decade of litigation, VNA should not be permitted to evade a determination of the lawfulness of its actions. Plaintiffs have identified ample bases for this Court to exercise its constitutional power to hold VNA to account for violating Plaintiffs' rights. VNA's motion to dismiss should be denied.

Dated:      March 23, 2020
            New York, New York

                              By: /s/ Michael F. Buchanan

                                  Michael F. Buchanan
                                  Brandon Trice
                                  George Soussou
                                  Greg Margolis
                                  PATTERSON BELKNAP WEBB &
                                  TYLER LLP
                                  1133 Avenue of the Americas
                                  New York, New York 10036
                                  (212) 336-2000

                                  Kevin Cremin
                                  Orier Okumakpeyi
                                  Daniel Ross
                                  MOBILIZATION FOR JUSTICE
                                  100 Williams Street
                                  New York, New York 10038
                                  (212) 417-3700

                                  *Attorneys for Michelle Bagley, Gary
                                  Milline, Hamilton Smith, Marcella
                                  Urban, Sharan Harper, and other
                                  similarly situated individuals*